[The following opinions were rendered at the May, 1890, term of the court, but were not published with others of that term because of the filing of petitions for rehearing, which were ruled upon at the October, 1890, term.—REPORTER.]

GEO. W. RADFORD, Assignee, v. A. B. THORNELL, Judge.

1. **Liquor Nuisance:** ABATEMENT: NON-RESIDENTS: ORIGINAL NOTICE: SERVICE. A non-resident of this state having title to real estate within the state as assignee in bankruptcy may, under Code, section 2618, subdivision '6, be served with original notice of an action commenced against him in this state under Code, section 1543.

2. ——: ——: ——: ASSIGNEES IN BANKRUPTCY: JURISDICTION. The courts of this state have jurisdiction of actions commenced under Code, section 1543, for the abatement of a nuisance, which is maintained upon real estate held by one as assignee in bankruptcy under appointment of a federal court in a foreign state, and such property is subject to the judgments of the courts in such cases to the same extent as other property within the state.

*Certiorari to the Pottawattamie District Court.*

THURSDAY, MAY 22, 1890.

THE plaintiff is the assignee in bankruptcy of Simeon and Frank Folsom, and holds his appointment from the United States district court, for the eastern district of Michigan, the assignee being a resident of the district in which he is appointed. Lot number 404, on Broadway, in the city of Council Bluffs, in the county of

( 709 )

Pottawattamie, is a part of the bankrupt estate, and the title thereof is in the plaintiff, as assignee. In August, 1888, one A. Overton, being a citizen of said county, instituted proceedings under the law for the suppression of intemperance, alleging that intoxicating liquors were being kept on said lot in violation of the law, and asking that the place be adjudged a nuisance, and that it be abated. In this proceeding Radford, as assignee, is made a defendant, and, under the usual averment that he was a non-resident of the state, service was had by publication. Default was made, and judgment entered in substantial accord with the prayer of the petition. The plaintiff institutes this proceeding to test the legality of the action of the district court.

*Sapp & Pusey*, for plaintiff.

*Stone & Sims*, for defendant.

GRANGER, J.—I. It is urged that the district court was without jurisdiction, because of no service being

1. LIQUOR nuisance: abatement: non-residents: original notice: service.

made as contemplated by law. The law provides under what circumstances a service by publication may be had, and we must look to Code, section 2618. The section specifies eight cases wherein service may be made by publication, and we think, if such service may be had in this case, it must be by virtue of subdivision 6, of the section, in these words :

"*Sixth.* In actions which relate to, or the subject of which is real or personal property in this state, when any defendant has, or claims, a lien or interest, actual or contingent therein, or the relief demanded consists wholly or partly in excluding him from any interest therein, and such defendant is a non-resident of this state or a foreign corporation."

Plaintiff's quotation of the subdivision is from Miller's Annotated Code of 1888, and the words, "or claims a lien or interests," are made to read "or claims a lien *of* interest. In the Code, as published in 1873, and

also, in McClain's Code of 1888, the word is *or*, and that
is evidently the correct language. The clause has
hardly a practical meaning if the word *of* is used. The
correction detracts much from the force of plaintiff's
argument on this branch of the case, as he quotes the
clause, and says: "He is not a lienholder in any sense.
The law makes him the holder of the title in fee, by
virtue of his office." The suit is against him in his
official capacity, and as such, if he holds the fee, he has
an interest. Looking to the petition, we see that the
action relates entirely to real estate, and to the lot in
question. The action is brought to have the place
adjudged a nuisance, and the nuisance abated. Inas-
much as the defendant is a non-resident, and the service
is by publication, the judgment cannot be personal, and
the object of the service is to obtain jurisdiction as to
the place or property sought to be condemned. In this
respect it is not unlike our *ad quod damnum* proceed-
ings. Code, section 1543, provides that the building or
erection of whatever kind, or the ground itself, in or
upon which the unlawful sale of liquor is carried on,
and the furniture, fixtures, vessels, etc., are a nuisance,
—not the person who keeps it,—and the action relates
directly to the property, and we think the case is
clearly within the provisions of the section.

II. It is next urged that the district court was
without jurisdiction because the property was in
the custody and control of the federal
court by virtue of the bankrupt proceed-
ings, and very many authorities are cited
to show its exclusive jurisdiction. There
appears to be an old bankrupt proceeding, which is yet
unsettled, and the assignee not yet discharged, and the
claim is, that the jurisdiction of the federal court, for
the purpose of the bankrupt proceedings, operates to
exclude the jurisdiction of the district court of this
state. That such is the general rule, could not be ques-
tioned, and the point urged by the defendant in sup-
port of the jurisdiction of the state court is, that its
exercise is justified by virtue of the inherent power of

2. —— : ——:
assignees in
bankruptcy:
jurisdiction.

the state to enforce its police regulations, to protect it citizens against the use of property in such a way as to impair the morals, health or happiness of the people. It is true that the statutes of the United States vest the federal courts with exclusive jurisdiction "of all matters and proceedings in bankruptcy," and the federal laws make quite extended specifications of the particulars of the jurisdiction, but among its specifications there are none seeming to indicate a purpose to control property to the exclusion of the state courts in any particular wherein its use under the laws of the state renders it subject to regulation or control for the health of the people or the preservation of good order. Indeed, it would seem that the assumption of such jurisdiction would be unwarranted. These proceedings in the state courts do not come within the scope or meaning of the law giving jurisdiction "of all matters and proceedings in bankruptcy." While they may deal with property belonging to a bankrupt estate, they are not designed to interfere with proceedings in bankruptcy, but for an independent purpose, and only to preserve the property against unlawful use. The detriment that might result from having to look to the protection of a federal court in Michigan, or any other foreign state, against the unlawful use of such property, can better be imagined than expressed; nor is it of the genius of our form of government that communities are to thus seek protection against criminal conduct, or the baleful consequences of maintaining a public nuisance in their midst. It is easy to imagine the existence of a nuisance more immediate and fatal to the health or peace of a community, and it will certainly be a wide departure from any known rule of procedure, if the operations of a bankrupt proceeding are to suspend the functions of the state courts in the application of the law for the suppression of such a nuisance. There is nothing in the spirit or policy of the bankrupt law evincing a purpose to exempt the property of a bankrupt estate from the operation of the state laws for governmental purposes in common with other property of the

state, either by the imposition of burdens or the restraints of use; nor does the law evince a purpose to divest the state courts of authority to give force and effect to the law for such purposes.

The effect of the judgment in the injunction proceeding was not to remove the property from the jurisdiction or control of the federal court, or to in any manner interfere with the operations of such court in the settlement of the bankrupt estate. It merely determined that the assignee should not use the property for an unlawful purpose, and assumed a control only to the extent of preventing such use. The judgment for costs, and the lien for its security, are the result of the assignee's misconduct in permitting the unlawful use of the property, and is a method prescribed by the law as a means to its enforcement. In this respect the property in question is on a common level with all other property of the state. If it is subject to the same restraints against unlawful use as other property, must it not be subject to the same consequences and burdens as other property under like conditions? It cannot be that it is the policy of the bankrupt law to interfere with the laws of a state for the regulation or control of property as against unlawful use, nor with the courts of the state in the application of such laws. If, in the application of the law, the property of a bankrupt estate becomes burdened with assessments because of its misuse, they should be treated by the federal courts as other legal assessments are. We do not follow plaintiff through the long line of authorities cited, because there can be no question of their force under the facts as they appear, nor are they broader than the language of the general statutes of the United States, but they are all based on facts so different from the case before us, that we think a different rule applies. The recent adoption of the law of this state under which the injunction proceeding was instituted makes the case, to some extent, unlike any other as to its facts; yet it is not outside the spirit of many decisions bearing on the authority of·a state for the enforcement of police regulations. *Martin*

*v. Blatner,* 68 Iowa, 287 ; *Railroad v. Husen,* 5 Otto, 465 ; *License Cases,* 5 How. 504 ; *Munn v. Illinois,* 4 Otto, 113. As bearing on the exclusive authority of the federal courts in matters that may affect property of a bankrupt estate, see *Clark v. Ewing,* 3 Fed. Rep. 83, where the statute giving to federal courts jurisdiction "of all matters and proceedings in bankruptcy" is to some extent construed, and other authorities are cited. The rule is much more liberal than the contention of plaintiff in this case.

These two points fully establish the jurisdiction of the district court, and is a determination of the case in this proceeding. If the court had jurisdiction, other questions, such as the extent of the attorney's fee, and the decree without evidence, can be reviewed only on an appeal. The writ of *certiorari* is DISMISSED.